OPINION
Defendant-appellant State Farm Mutual Automobile Insurance Co. ("State Farm") appeals the March 8, 2001 Judgment Entry of the Stark County Court of Common Pleas, overruling its motion for summary judgment and granting the motion for summary judgment of plaintiffs-appellees Annette E. Leisure, et al. ("appellees").
 STATEMENT OF THE FACTS AND CASE
On August 6, 1997, appellees filed an action against State Farm, seeking a judicial determination they were entitled to receive underinsured motorist benefits for damages arising out of an automobile accident on August 17, 1995, which resulted in the death of Jason Leisure, Annette and Dennis Leisure's son and Jacob Leisure's brother. Appellees settled their wrongful death/tort claims against the tortfeasors Jonathan Sanchez and George Motz. Appellees received $50,000 from Grange Mutual Casualty, which exhausted the limits of Motz's bodily injury liability coverage; appellees also received $98,000 from Farmers Insurance of Columbus, Inc., which substantially exhausted the limits of Sanchez's bodily injury liability coverage.
At the time of the accident, Jason Leisure was the named insured on an automobile policy issued by State Farm (Policy No. 699 4063-F-16-35D). The Policy provides underinsured motorist coverage limits of $100,000 each person and $300,000 each accident/occurrence. The parties dispute the effective date of the policy, which consequently affects whether the Ohio Supreme Court's decision in Savoie v. Grange Mut. Ins. Co.[1] or Am. Sub. S.B. No. 20 applies. The parties filed cross-motions for summary judgment. Via Judgment Entry filed March 8, 2001, the trial court granted appellees' motion for summary judgment and denied State Farm's motion.
It is from this judgment entry State Farm appeals, raising as its sole assignment of error:
 THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING PLAINTIFFS-APPELLEES' MOTION FOR SUMMARY JUDGMENT.
Any other facts relevant to our disposition of State Farm's assignment of error shall be contained therein.
 STANDARD OF REVIEW
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.[2] Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.[3]
 I
In Ross v. Farmers Ins. Group of Cos.[4] the Ohio Supreme Court held:
 For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.[5]
In Ross, the insureds sought underinsured motorist benefits from the insurer.[6] The trial court granted summary judgment in favor of the insureds, finding the law in effect at the time of the accident controlled the determination of whether the insureds were entitled to UIM benefits.[7] The Court of Appeals reversed, concluding the law in effect at the time of the settlement with the tortfeasor controlled such determination.[8] The Court of Appeals certified a conflict to resolve the issue: "When does a cause of action for underinsured motorist coverage accrue so as to determine the law applicable to such a claim?"[9]
Recently in Wolfe v. Wolfe[10] the Ohio Supreme Court interpreted R.C. 3937.18 as amended by S.B. 20.[11]
The Wolfe Court held:
 [P]ursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state, must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. We further hold that the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. Pursuant to our decision in Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, the statutory law in effect on the date of issue of each new policy is the law to be applied.[12]
In Wolfe, the Ohio Supreme Court was called upon to interpret R.C.3937.31(A). The court was specifically asked to decide "what effect R.C.3937.31(A) has in determining the applicable law governing [an insured's] underinsured motorist claim."[13] The insured argued R.C. 3937.31(A) required an automobile liability insurance policy be at least two years regardless of the number of one month, six-month, or yearly renewals.[14]
The insurer conversely argued "the `guarantee period' set forth in R.C.3937.31(A) applies only to the first two years after an insurance company initially issues coverage to an insured."[15] The Wolfe Court concluded the language of the statute did not support the insurer's position because the statute provides "[e]very automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years."[16] The court proceeded to apply its rule of law to the matter before it, and counted successive two year policy periods from the original issuance date of the insured's automobile liability insurance policy[17] and determined the last guarantee policy period ran from December 12, 1993, to December 12, 1995.[18] The Wolfe Court concluded S.B. 20 was enacted subsequent to the commencement of the last guaranteed policy period; therefore, it was not incorporated into that contract.[19]
Herein, the parties dispute the effective date of the contract of insurance between the decedent and State Farm. State Farm maintains S.B. 20 controls the issue sub judice. State Farm submits the policy was originally issued to Annette Leisure on June 16, 1993, and counting consecutive two year periods from that date, the last guarantee policy period ran from June 16, 1995, through June 16, 1997. Accordingly, State Farm asserts the provisions of S.B. 20 had been incorporated into the contract of insurance and the Leisures are not entitled to UIM benefits. State Farm further submits, assuming arguendo, a new contract of insurance was created when the decedent became the named insured, S.B. 20 would still control. State Farm explains the decedent was substituted as the named insured on the policy effective July 29, 1993.[20] Counting successive two-year periods from that date, the last guaranteed policy period ran from July 29, 1995, through July 29, 1997. Because a new contract commenced subsequent to the enactment of S.B. 20, the Leisures are not entitled to UIM benefits. Conversely, appellees submit a new contract of insurance commenced on October 14, 1994, six days before the enactment of S.B. 20. As such, appellees assert the provisions of S.B. 20 were not incorporated into the contract and the Ohio Supreme Court's decision in Savoie is applicable.
This Court must now determine when a new contract of insurance became effective. As stated supra, State Farm issued a policy of insurance to appellees on June 16, 1993 (Policy No. 699 4063 F-16-35). Annette Leisure was the named insured and the covered vehicle was a 1973 Volkswagen. On July 29, 1993, State Farm issued Policy No. 699 4063 F-16-35A with the decedent as the named insured and the 1973 Volkswagen as the covered vehicle. State Farm issued Policy No. 699 4063 F-16-35B on December 16, 1993, which included the same named insured, covered vehicle, and coverages as the previous policy. On August 10, 1994, State Farm issued Policy No. 699 4063 F-16-35C, which deleted certain coverage from the previous policies. Subsequently, on October 14, 1994, State Farm issued Policy No. 699 4063 F-16-35D, with the decedent as the named insured, the covered vehicle a 1986 Chevrolet Cavalier, and additional comprehensive and collision coverage.
We find the October 14, 1994 policy in effect of the time of the accident was a new contract of insurance; therefore, the provisions of S.B. 20 do not apply and the Leisures are entitled to UIM benefits. InFarmer v. Deeds[21], this Court determined a change in the named insured creates a new contract of insurance. In the instant action, substantive changes were made to the policy issued October 14, 1994. That policy provided coverage for a different vehicle as well as increased comprehensive and collision coverage. Additionally, State Farm representatives indicated each subsequent policy was a replacement for the previous policy, which is suggestive of the formation of a new contract. State Farm asks this Court to read Wolfe as limiting the parties' ability to form a new contract to every two years from the effective date of the initial insurance contract. We disagree with such an interpretation. R.C. 3937.31(A) provides, "[e]very automobile insurance policy shall be issued for a policy period of not less than two years * * *" The statute does not preclude an insured and the insurer from entering into a new contract of insurance within that two year period.
State Farm's sole assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.
Costs assessed to appellant.
Hon. Julie A. Edwards, P.J. Hon. William B. Hoffman, J. Hon. John F. Boggins, J. concur.
[1] Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500 .
[2] Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36.
[3] Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
[4] Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281.
[5] Id.
[6] Id.
[7] Id. at 282, and 283-284.
[8] Id. at 283, 284.
[9] Id. at 284.
[10] Wolfe v. Wolfe (2000), 88 Ohio St.3d 246.
[11] R.C. 3937.31 as amended provides, in pertinent part:
 Every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. Where renewal is mandatory, `cancellation,' as used in sections 3937.30 to 3937.39
of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period. No insurer may cancel any such policy except pursuant to the terms of the policy, and in accordance with sections 3937.30 to 3937.39 of the Revised Code * * *.
[12] Id. at 250.
[13] Id. at 248.
[14] Id.
[15] Id.
[16] Id. at 249.
[17] The parties agreed that the original issuance date was December 12, 1983.
[18] Id. at 250.
[19] Id. at 250-251.
[20] Appellant's Brief at 5.
[21] Farmer v. Deeds (Dec. 1, 2000), Licking App. No. 00CA31, unreported.